[Crim. No. 2393. First Dist., Div. Two. Oct. 17, 1946.]

THE PEOPLE, Respondent, v. ABE PHILLIPS, Appellant.

Reed M. Clarke for Appellant.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Edmund G. Brown, District Attorney, and Norman H. Elkington, Assistant District Attorney, for Respondent.

NOURSE, P. J.—On May 11, 1945, appellant Abe Phillips and Charles Kelso, also known as Charles Kelson, were charged by an indictment containing three counts with a conspiracy to violate section 337b of the Penal Code and with offers and attempts to bribe under that code section. The first count covered the conspiracy charge, setting forth three overt acts, and the second and third counts alleged separate violations of section 337b, covering the offer of bribes to Willie

Carter, also known as Jackie Cooper, a pugilist, to induce him not to use his best efforts to win a boxing contest with his opponent, Freddie Dixon.

The prosecution's principal witness, Jackie Cooper, testified to the following facts: He arrived in San Francisco on February 11, 1945, to commence physical training for a professional boxing contest against Freddie Dixon scheduled for February 22, 1945. Cooper registered at a hotel catering to colored guests and at which his opponent was also staying. A day or two after his arrival at the hotel Cooper encountered defendant Kelson, a trainer, whom he had met in the past. Kelson told him that Freddie Dixon was going to lose the fight and that he would give Cooper all of the details upon his return from a trip to Los Angeles. On about February 15, 1945, Cooper met Kelson for the second time in the hotel lobby and asked if Dixon were still "in the bag to lose the fight." Kelson told him to wait until he had talked with defendant Phillips who was then en route to the hotel. Cooper and Kelson thereupon walked to the outside of the hotel and when Phillips drove up Kelson went over to talk with him privately. Subsequently Kelson came back to where Cooper was standing and stated that Phillips would give him $1,000 to lose the first two rounds of the contest so that during the fight the betting odds would shift to Dixon who had been "fixed" to lose in the eighth round. Cooper agreed to accept the $1,000 but refused to accept a bribe of $4,000 to lose the contest entirely. After talking with Phillips again Kelson stated that the former would have the $1,000 for Cooper on the following Monday. On that day Cooper received a telephone call from a person asking him to meet defendant Phillips outside of the hotel. Upon Phillips' arrival Cooper got into the automobile and the two drove a short distance and stopped. During the ensuing conversation Phillips stated that since Cooper had become a favorite to win the contest he would be unable to give him the $1,000 to lose the first two rounds but that he would give him five or six thousand dollars to lose the fight entirely. Cooper refused to accept the bribe even though Phillips telephoned to him later about the offer. On the morning of the contest Kelson met Cooper in the hotel and after a short conversation asked him to wait in his room. Kelson returned to the room in a few minutes and stated that Phillips was downstairs and would give Cooper $7,000 to lose the contest. The witness testified that he also refused this offer.

That night the contest was stopped in the seventh round and Cooper, who admitted that he had not put forth his best efforts in the first two rounds, was disqualified. Cooper returned to his hotel and subsequently went with a friend, Freddie Alexander, to Kelson's room for a gathering which included defendants Phillips and Kelson. The latter two men berated Cooper on the ground that he had "messed up everything" and told him that he had been a "sucker" for refusing the money to lose the fight. Alexander corroborated this portion of Cooper's testimony. Cooper further testified that when the Boxing Commission decided to investigate the contest he went to defendant Phillips' place of business, a dance hall, where he discussed the situation with Phillips who instructed him to tell the commission that he had not taken a bribe and not to mention any names. One of Phillips' employees wrote down for Cooper the essence of what he should tell the commission. A few days subsequent to the Boxing Commission's hearing one of Phillips' friends gave Cooper $100 to leave the city. On cross-examination Cooper freely admitted that his testimony before the commission to the effect that he had fought his best and that no bribe had been offered to him was perjured but insisted that his testimony at the trial was true.

Appellant Abe Phillips testified that he did not know defendant Kelson, that he had not been in the latter's room and that he at no time offered a bribe to Cooper. Kelson denied that he had talked with Cooper at any time before the fight and denied knowing Phillips personally prior to the trial of this case. In the face of the defendants' denials the district manager of passenger service for an airline company testified from business records that in February Phillips made a reservation for Kelson for a flight between San Francisco and Los Angeles, and a telephone company agent testified from business records that telephone calls between San Francisco and Los Angeles had been made between the defendants on dates prior to the boxing contest.

On the basis of the evidence summarized above the jury found Kelson and Phillips guilty on each of the three counts of the indictment. The trial court denied defendants' motions for new trial and for probation and entered a judgment on the verdicts. Phillips was sentenced to the county jail for the term of one year, one day suspended on probation, on counts one and two, the terms to run concurrently; he was fined $1,000 on count three. Phillips appeals from the judgment and from

the order denying his motion for a new trial. The state has filed a motion "for dismissal of appeal with direction to return the cause to the trial court for entry of proper judgments under counts one and two of the indictment"; the motion has been submitted with the appeal.

Appellant Phillips argues that the evidence was so in- herently improbable that it was insufficient as a matter of law to support the judgment. It is contended that the testimony of Cooper was lacking in credibility and in view of the fact that he perjured himself before the Boxing Commission his testimony could not be accepted as evidence in the trial court. We cannot agree with these arguments. ■ The credibility of a witness and the weight to be given to his testimony are, of course, issues solely for the jury or trier of facts. (*People* v. *Marble*, 8 Cal.2d 139, 141 [64 P.2d 135]; *People* v. *Voice*, 68 Cal.App.2d 610, 614 [157 P.2d 436]; *People* v. *Santora*, 51 Cal.App.2d 707, 711 and 712 [125 P.2d 606].) ■ It is only where the testimony relied upon by the prosecution is so inherently improbable as to amount to no evidence at all that an appellate court is authorized to reverse a judgment (*People* v. *Stephens*, 66 Cal.App.2d 755, 757 [152 P.2d 1019]; *People* v. *Moreno*, 26 Cal.App.2d 334, 336 [79 P.2d 390]), and contradictions or inconsistencies in the testimony of a witness do not render it inherently improbable within this rule. *People* v. *Carlisle*, 66 Cal.App.2d 874, 876 [153 P.2d 401]; *People* v. *Moreno, supra.* ■ Hence here the credibility to be given to Cooper's testimony was a matter for the determination of the jury. It was supported by the testimony of Freddie Alexander as well as the testimony of the air lines and telephone company agents. In view of the explanation that the bribes were offered to influence betting odds during the course of the contest the evidence cannot be said to be improbable in any sense. A reading of the record compels the conclusion that the conviction of the appellant was supported by substantial, even overwhelming, evidence and should not be disturbed. (*People* v. *Simpson*, 66 Cal.App.2d 319, 327 [152 P.2d 339]; *People* v. *Guttmann*, 10 Cal.App.2d 490, 491 [52 P.2d 495]; *People* v. *Hooper*, 10 Cal.App.2d 332, 335 [51 P.2d 1131].

■ It is contended by the appellant that section 337b of the Penal Code (Stats. 1941, ch. 80) under which he was convicted is unconstitutional for the following two reasons: (1) The statute was passed as an urgency measure when no

emergency existed and no facts showing any reason for giving the statute immediate effectiveness were set forth in the act, and (2) the title when analyzed in connection with the subject matter of the statute relates to more than one subject in violation of the provisions of section 24 of article IV of the Constitution of California. In answer to the first of these contentions it should be noted that the statute in question was enacted in 1941 as an amendment to section 337b of the Penal Code then in effect. The code section which at that time pertained solely to baseball was broadened to include "any sporting event, contest, or exhibition of any kind whatsoever, where admission is charged," making the offering, giving or attempting to give any player money, bribe or thing of value with the intention, understanding or agreement that the participant would not use his best efforts a felony. Section 4 of the act declared it to be an urgency measure to take effect immediately, but the sufficiency of such statement of facts under section 1 of article IV of the Constitution cannot be attacked by the appellant herein. The code section became effective as an urgency measure on April 4, 1941, approximately four years before appellant was indicted. Under the general rule if no emergency existed or the urgency declaration were invalid that would not impair the validity of the remainder of the statute which would take effect at the regular time appointed by law. *Riley* v. *Carrico,* 27 Okla. 33 [110 P. 738, 740]; 50 Am.Jur. 514; 59 C.J. 1146-1147. California cases are in accord with this principle. *Michelson* v. *City of Sacramento,* 173 Cal. 108, 109 [159 P. 431]; *In re Hoffman,* 155 Cal. 114, 120 [99 P. 517, 132 Am.St.Rep. 75]; *Morgan* v. *City of Long Beach,* 57 Cal.App. 134, 139 [207 P. 53]. Hence here in any event the statute became effective "ninety days after the final adjournment of the session of the Legislature which passed such act" (Cal. Const. art. IV, § 1) and is not subject to this type of attack by the appellant at this late date.

The second ground upon which appellant bases his contention that section 337b is unconstitutional is also without merit. Section 24 of article IV of the Constitution provides: "Every Act shall embrace but one subject, which subject shall be expressed in its title." The title of the statute involved on this appeal reads as follows: "An act to amend Sections 337b, 337c, 337d and 337e of, and to add Section 337f to, the Penal Code, relating to crimes in connection with sporting events, contests and exhibitions, including horse

racing, baseball, football, boxing and wrestling, declaring the urgency of this act, to take effect immediately'' (Stats. 1941, ch. 80, p. 1031.) The appellant's argument is answered by the recent decision in *People* v. *Oreck,* 74 Cal.App.2d 215 [168 P.2d 186] (petition for transfer denied) wherein a similar challenge to section 337a of the Penal Code was made and the court held: (p. 222) ''Where the body of the act embraces provisions germane to the general subject stated in the title, or when the title suggests the field of legislation which is included within the text of the act, the title will be held to be sufficient. (*People* v. *Jordan,* 172 Cal. 391 [156 P. 451].) The title should be liberally construed so as to uphold the statute if a reasonable reference to the subject matter included therein may be ascertained from the language employed. (*Hecke* v. *Riley,* 209 Cal. 767 [290 P. 451] ; *Pierce* v. *Riley,* 21 Cal.App.2d 513 [70 P.2d 206].) It is not necessary to embrace in the title every detail of the enactment. It is not necessary that the title should catalogue the contents of the statute. (*People* v. *One Ford V8 Tudor Sedan,* 12 Cal.App.2d 517 [55 P.2d 908] ; *People* v. *Buyle,* 20 Cal.App.2d 650 [68 P.2d 268].) Tested by these standards the title is clearly sufficient.'' The statute involved herein does not include more than one subject because all the included matters require the same kind of regulation and all matters contained in the act relate to the general subject expressed in the title. (23 Cal.Jur. 646 and cases there cited.)

Appellant argues that he was prejudicially deprived of counsel while the jury was being instructed and at the time the verdict was returned and that as a result the trial court had no jurisdiction to pronounce judgment. In view of the record the contention requires little discussion. Appellant's attorney on this appeal was substituted for Joseph A. Brown who represented Phillips during the trial of the action. The clerk's transcript shows that the appellant was represented by counsel at all times and the only indication that Mr. Brown may not have been present at the time that the jury was instructed is found in the reporter's transcript which shows that a Mr. Mann stipulated that the jurors were present and waived written instructions on behalf of Phillips. The record shows that subsequent to the recordation of the verdicts and at the time that the defendants were arraigned for judgment the appellant's attorney, Mr. Brown, stated he had heard that the court's instructions were ''very fair.'' No complaint was

made in the lower court during any of the proceedings or on motion for a new trial to the effect that Phillips was deprived of counsel and there is no merit to this objection raised for the first time on appeal.

 Appellant argues that the trial court committed error in permitting the records of the air line and telephone companies to go to the jury room because the latter record showed telephone messages from Phillips to certain musicians whose names might cause the jury to gain the impression that they were gamblers. The record shows that after several hours' deliberation the jury requested the court to send the exhibits to the jury room. As stated above appellant was represented by counsel whose sole objection was that only certain of the exhibits were offered in evidence. The court thereupon sent to the jury all of the exhibits "marked in evidence." This was not error. *People* v. *Descant,* 51 Cal.App.2d 343, 349 [124 P.2d 864]; *People* v. *Walther,* 27 Cal.App.2d 583, 593 [81 P.2d 452]. The present objections are improperly raised for the first time on appeal and no prejudice has been shown by the trial court's action.

 Appellant next objects to an instruction wherein the court in effect told the jury that there was a substantial conflict in the evidence. The challenged instructions continued with the following: "If you are unable to determine where the truth really lies, then you must resolve the doubt in favor of the defendants. The defendants in this case should only be convicted if the case is free from a reasonable doubt in your minds under the evidence and the instructions of the Court." The instructions in this case, including the one under attack herein, were full and fair. The jury was instructed on all of the necessary elements of the offenses charged and the rights of appellant were fully protected. It is well settled that the trial judge may comment on the evidence as a whole providing such comment is fair and temperate (*People* v. *Patubo,* 9 Cal.2d 537, 542 [71 P.2d 270, 113 A.L.R. 1303]; *People* v. *De Moss,* 4 Cal.2d 469, 476 and 477 [50 P.2d 1031]; *People* v. *King,* 30 Cal.App.2d 185, 205 [85 P.2d 928]), and that he may indicate that the evidence is in conflict. *People* v. *Un Dong,* 106 Cal. 83, 88 and 89 [39 P. 12]; *People* v. *Flynn,* 73 Cal. 511, 516 [15 P. 102]; 53 Am.Jur. 476. In view of the state of the evidence in this case the instruction was not error.

 Appellant finally argues that the court had no authority to sentence him under the third count of the indictment

after having sentenced him on the second count because both counts relate to the same single and continuing offense, and hence they can be the subject of but one penalty. The record does not support this contention. The second count of the indictment alleged a violation of section 337b of the Penal Code on February 18, 1945, and the third count alleged a violation on February 22, 1945. The evidence showed that the offers of bribes involved two different sums of money offered on different days; one offense was completed and an interval of several days elapsed before the second act occurred. Under such circumstances each act constituted a separate and distinct violation of the statute punishable as such. No plea of double jeopardy or double punishment was entered in any stage of the proceedings before the trial court hence the plea is waived and cannot be raised for the first time on appeal. *In re Harron,* 191 Cal. 457, 467 and 468 [217 P. 728]; 7 Cal. Jur. 995 and 996, and cases there cited.

We conclude that the conviction of appellant finds ample support in the record and should be sustained, and that the order denying appellant's motion for new trial should be affirmed.

Respondent moves to dismiss the appeal with direction to return the cause to the trial court for entry of proper judgment on the first and second counts of the indictment on the ground that a jail sentence was imposed in violation of the mandate of the statute. Section 337b of the Penal Code expressly provides that its violation is a felony punishable "by imprisonment in the State prison for a period not exceeding five years, or by a fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment." Section 182 of the Penal Code provides that if two or more persons conspire "to commit any felony, . . . they shall be punishable in the same manner and to the same extent as . . . provided for the punishment . . . of the said felony. . . ."

 In the instant case the appellant was sentenced on the conspiracy charge of the first count of the indictment and on the independent violation of section 337b of the Penal Code charged in the second count to ". . . imprisonment in the County Jail of the City and County of San Francisco, State of California, for the term of One (1) year, One Day suspended on probation . . . , Count No. Two (2) term to run concurrently with term imposed in count No. One (1). . . ." Since a motion for probation was denied by the trial court,

for appellant admitted that he had been convicted of a prior felony (Pen. Code, § 1203) and as the court made no reference of the matter to the probation officer for his investigation and report as required by section 1203 of the Penal Code (*People* v. *Lopez,* 43 Cal.App.2d Supp. 854, 861 [110 P.2d 140]) it cannot be assumed that the court granted probation on the condition that Phillips serve the sentence to the county jail. Therefore, it must be held that a judgment was actually rendered rather than reserved during a probationary period.

In view of the mandate of section 337b of the Penal Code requiring that the sentence be either imprisonment in the state prison or a fine, or both, the trial court was without authority to impose a jail sentence on the second count of the indictment; under section 182 of the Penal Code read in connection with section 337b the imposition of a jail sentence on the first count was also unauthorized. *People* v. *Superior Court,* 135 Cal.App. 562 [27 P.2d 670] ; *People* v. *Superior Court,* 116 Cal.App. 412 [2 P.2d 843].

The motion to dismiss the appeal is denied. The judgment is affirmed and the cause remanded to the Superior Court of the State of California in and for the city and county of San Francisco, to arraign the appellant Abe Phillips for sentence according to law.

Goodell, J., and Dooling, J., concurred.