[Crim. No. 4418.   Second Dist., Div. Three.   Mar. 2, 1950.]

THE PEOPLE, Respondent, v. LOUIS D. PONCE, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

SHINN, P. J.—By information in three counts appellant Ponce was charged with robbery of Louis D. Pitzel, robbery of J. S. Addis, and kidnaping of Louis D. Pitzel for the purpose of robbery. Two prior convictions were alleged. Appellant admitted the two prior convictions and that he had served terms of imprisonment therefor. Following a trial by jury he was found guilty on all three counts; his motion for a new trial and application for probation were

denied; judgment was pronounced, defendant was found to be an habitual criminal within the meaning of section 644(a) of the Penal Code, and was sentenced to prison for the term prescribed by law (for life) on each of the robbery convictions, and for the term of his natural life with possibility of parole upon the kidnaping conviction. The sentences on the first two counts were ordered to run concurrently with the sentence on the third count. The appeal is from the judgments of conviction on all three counts and from an order denying a motion for new trial.

■ Appellant was identified by Louis D. Pitzel as one of three men who held up his café on the morning of December 3, 1948, the other two being one Valencia, and one Burrer. Pitzel testified that at the point of a gun Burrer ordered him to the front of the bar where he took his wallet containing several hundred dollars; Pitzel saw Ponce back off from the stool where he had been sitting at the bar and start tugging at something in his trousers, and then start clearing the customers down to the end of the bar and ushering them into the men's room; Pitzel refused to open the front cash register drawers and Burrer opened them himself, finding nothing; Burrer ordered Pitzel back to the central cash register which they opened and Burrer gathered what bills he could; Pitzel was then ordered from the bar to an office some 60 feet away, where Burrer then ordered Pitzel out of the office toward the men's room, some 40 feet from the office; defendant Ponce dashed through an archway and motioned to Burrer whereupon the latter forced Pitzel, still at the point of a gun, to enter the men's room in which the other guests and employees had already been placed. While Pitzel was still behind the bar a waitress came to the front door and finding it to be locked walked to the rear door and entered through the kitchen. She was met by defendant Ponce, who escorted her into the restaurant at the point of a gun which Pitzel described as a long barrel revolver type made of blue steel. James S. Addis testified that he was in the café at the time of the robbery; as he finished ordering his breakfast he noticed defendant Ponce sliding off his stool at the bar and reaching for something in his trousers; Ponce drew a large gun, pointed it at him and said "This is a holdup, get over there in the dark"; Addis went and stood outside the men's restroom while Ponce went to the front and forced the other customers toward the back; they were then ordered into the men's restroom and

after a few minutes Ponce came in with the revolver in his hand and forced Addis to give him some $20 which he had in his pocket. John W. Powers, a Los Angeles policeman, testified that he went to Denver, Colorado, to apprehend defendant Ponce; in the presence of Powers and his partner, Ruiz, and Captain Pitt of the Denver police, Ponce admitted that he had participated in the robbery and had received about $500 from it; Burrer had provided the car which they had used; he went on the job because he thought it would be easy but that he did not want to have anything more to do with Burrer; after leaving the cafe Valencia had gotten out of the car at the end of Macy Street and he, Ponce, had gotten out on Soto Street and had gone to Mexico. Powers testified that all of these statements were free and voluntary.

The foregoing evidence is clearly sufficient to support the conviction of robbery. It is also sufficient to support the conviction of kidnaping. (*People* v. *Tanner,* 3 Cal.2d 279, 295 [44 P.2d 324]; *People* v. *Johnston,* 140 Cal.App. 729 [35 P.2d 1074]; *People* v. *Melendrez,* 25 Cal.App.2d 490 [77 P.2d 870].)

█ Appellant's chief contention is that section 209 of the Penal Code, which defines the crime of kidnaping for the purpose of robbery, was not intended to repeal or replace section 211 which defines the crime of robbery, and that section 209 both inherently and as applied in the present case is unconstitutional in that it makes every robbery a kidnaping and thus provides double punishment for a single offense. We find it unnecessary to pass upon the merits of this contention (see *People* v. *Tanner,* 3 Cal.2d 279 [44 P.2d 324]; *People* v. *Tanner,* 77 Cal.App.2d 181, 186 [175 P.2d 26]; *People* v. *Simpson,* 66 Cal.App.2d 319 [152 P.2d 339]; *People* v. *Bruno,* 140 Cal.App. 460 [35 P.2d 391]), in view of the fact that the sentences in the present case, which were all for life imprisonment, were ordered to run concurrently. Since his conviction and sentence were in any event clearly proper on the robbery counts, appellant is in no way prejudiced and may not urge the invalidity of his conviction for kidnaping. (*People* v. *McWilliams,* 87 Cal.App.2d 550, 553 [197 P.2d 216], and cases there cited; *People* v. *Bean,* 88 Cal.App.2d 34, 41 [198 P.2d 379]; *People* v. *Benenato,* 77 Cal.App.2d 350, 367 [175 P.2d 296].)

█ It is argued that the court erroneously failed to define for the jury the words "aided and abetted" as contained in an instruction that "the defendant is not chargeable with the acts of other persons unless he committed the act

himself or aided and abetted in its commission." This instruction was requested by appellant, but there was no request for any instruction defining who is an aider and abettor.

█ It has been held that "aid" and "abet" are commonplace words which jurors must be deemed to have understood and that the court is not required to define them of its own motion. (*People* v. *Wong Hing*, 176 Cal. 699, 706 [169 P. 357].) We are unable to agree with this holding. The term "aid and abet" is not one in everyday use by laymen although it is commonly used in law. It would be unrealistic to assume that jurors will invariably understand that the word "aid" does not imply guilty knowledge or felonious intent whereas the word "abet" includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime. (*People* v. *Dole*, 122 Cal. 486 [55 P. 581, 68 Am.St.Rep. 50].) █ Whenever instructions are given to the effect that one may be convicted if he aids and abets the criminal act the two words should be clearly defined. There is substantial evidence that the two words are not always understood even by courts and lawmakers. A few of the numerous cases in which the words were improperly used in the disjunctive are *People* v. *Morine*, 138 Cal. 626 [72 P. 166]; *People* v. *Terman*, 4 Cal.App.2d 345 [40 P.2d 915]; *Lassen* v. *Board of Dental Examiners*, 24 Cal.App. 767 [142 P. 505]. █ The same mistake is found in sections 209 and 210 of the Penal Code which declare that one is guilty if he aids *or* abets the act which constitutes kidnaping. The court in the present case gave an instruction in the language of section 209 but also gave instructions stating clearly that defendant could not be convicted unless he was shown to have aided *and* abetted in the commission of the acts charged. The mistake in sections 209 and 210 should be corrected. The jury should not be instructed in the language of these sections as they now stand but in accordance with the provisions of section 31 of the Penal Code which declares that those who aid and abet are guilty as principals. █ There is, however, no foundation for the claim in the present case that defendant suffered prejudice by reason of the instructions that were given or the failure of the court to define the word "abet." Defendant's part in the crimes was shown to have consisted of herding several people into a small room at the point of a gun and detaining them there while he robbed one of them. His defense was that he was not present when the offenses

were committed. There was no need for a definition of "abet." If defendant participated at all in the offenses he committed the unlawful acts directly. There was nothing in the evidence whatsoever to suggest that he gave aid or assistance to his codefendants except for the purpose of accomplishing the offenses charged.

■ Appellant's final contention is that the court erred in denying his motion for a new trial on the ground of newly discovered evidence. In connection with the motion defendant filed an affidavit of one Arthur Villegas, averring that he was present in the café in the company of Julia Ruiz at the time of the robbery; that he saw the three men who participated therein and that defendant Ponce left the café prior to the robbery and was not one of the three men who committed it. It was also averred that Villegas did not learn of the trial of Ponce until after its conclusion when, by chance, he met Julia Ruiz on the street. At the hearing on the motion Julia Ruiz testified that Villegas was with her in the café at the time of the robbery, but that she did not know his address or how to find him and only chanced to meet him after the trial was concluded. Ponce also testified that he did not know Villegas or how to find him. In view of the fact that the testimony of Villegas would clearly be merely cumulative to that presented at the trial by Julia Ruiz and appellant, and was squarely contradicted by the testimony of Pitzel and Addis, it cannot be said that the denial of a new trial was an abuse of discretion.

The attempted appeal from the sentences is dismissed. The judgments and the order denying a new trial are affirmed.

Wood, J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1950. Carter, J., voted for a hearing.