[Crim. No. 26672. Second Dist., Div. Three. Sept. 25, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RICARDO SAMUEL CABRAL et al., Defendants and Appellants.

**COUNSEL**

Albert D. Silverman and Henry P. Crabtree, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

COLE (J. L.), J.*—Ricardo Cabral and Daniel Gonzales were each convicted of assault with a deadly weapon upon one Basil Louis in violation of Penal Code section 245, subdivision (a) (count I).[1] Also, they were each convicted of carrying a dirk or dagger concealed upon their persons in violation of section 12020 (count III). Cabral was also convicted of assault with a deadly weapon upon Louis in violation of section 4501, Cabral being a person confined in a state prison other than a person undergoing a life sentence (count II). Each appeals. We affirm the judgment with respect to Gonzales. We reverse the judgment as to counts I and III with respect to Cabral, affirm his conviction as to count II and remand the matter to the trial court to impose sentence upon him as to count II.

I.

*Facts*

The facts may be simply stated. Cabral and Gonzales were each inmates of the Los Angeles County jail as was the victim, Basil Louis. Another inmate, one Malczewski, saw Cabral and Louis engage in a fight, with Cabral on top of Louis. At this time, Cabral said something in Spanish which Malczewski could not make out. About 30 seconds later Gonzales took the alleged dirk or dagger from his pocket and gave it to Cabral. Malczewski did not watch the fight further but saw Louis return to his own cell bleeding heavily on his left side. Malczweski later saw Gonzales hide the weapon in a cell.

The victim's brother, Curtis Louis, was also an inmate in the jail. He saw Gonzales approach Cabral and hand him what Curtis Louis described as a "handmade knife or a shiv." Curtis Louis saw Cabral stab the victim twice in the side with the weapon. Curtis Louis testified that Gonzales tried to hide the weapon.

---

*Assigned by the Chairman of the Judicial Council.

[1]All further section references are to the Penal Code.

It was stipulated that Cabral was a person confined in a state prison within the meaning of section 4501.[2]

## II.

### Failure to Define "Dirk or Dagger" and "Deadly Weapon" in Instructions

Gonzales and Cabral each complain that the trial court failed to define dirk or dagger for the jury in its instructions.[3] The court did so fail and thus left the jury in the dark as to whether the weapon used fell within the prohibition of section 12020.[4] At the same time the trial court also failed to define a deadly weapon; counts I and II each charge assault with a deadly weapon. Since the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence, even though not requested to do so, and since those general principles are the ones commonly or closely and openly connected with the facts of the case (*People* v. *Hood* (1969) 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]) a definition of a dirk or dagger and a definition of what constitutes a deadly weapon would ordinarily seem to be required. (See *People* v. *Caberera* (1930) 104 Cal.App. 414, 417 [286 P. 176]; *People* v. *Iverson* (1972) 26 Cal.App.3d 598, 603 [102 Cal.Rptr. 913], disapproved on another ground in *In re Earley* (1975) 14 Cal.3d 122, 130, fn. 11 [120 Cal.Rptr. 881, 534 P.2d 721].)

In this case, however, no prejudice occurred from the court's failure to instruct. This is because we have concluded that the weapon used was a dirk or dagger as a matter of law, and because it is undisputed that it was used to stab the victim. Its character as a deadly weapon is also clearly established.

We have examined the weapon in question. It consists of a piece of wire somewhat thicker than a coat hanger and slightly less than eight and one-half inches in length. A shoe lace is wound around the top three and one-fourth inches, approximately, so as to form, in effect, a handle. The wire itself is rigid and cannot be readily bent. It is almost straight; its

---

[2]"Every person confined in a state prison of this state except one undergoing a life sentence who commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, shall be guilty of a felony and shall be imprisoned in the state prison not less than three years."

[3]As discussed below we reverse Cabral's conviction on count III for other reasons. .

[4]The section makes it a felony for one to carry "concealed on his person any dirk or dagger."

appearance is that of a piece of metal which was originally twisted or curved and which has been pounded but not totally straightened out. While the sides are rounded the exposed point of the implement has been sharpened. In short, the device looks much like a home made ice pick. One of the jail guards who testified as a witness opined that it had been made from a bedspring.

". . . 'A dagger has been defined as any straight knife to be worn on the person which is capable of inflicting death except what is commonly known as a "pocket-knife." Dirk and dagger are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc. (Century Dict.) They may consist of any weapon fitted primarily for stabbing. The word dagger is a generic term covering the dirk, stiletto, poniard, etc. (Standard Dict.)' " (*People* v. *Forrest* (1967) 67 Cal.2d 478, 480 [62 Cal.Rptr. 766, 432 P.2d 374], quoting *People* v. *Ruiz* (1928) 88 Cal.App. 502, 504 [263 P. 836].)

Whether an implement is a dirk or a dagger may be a question of fact. (*People* v. *Bain* (1971) 5 Cal.3d 839, 850-851 [97 Cal.Rptr. 684, 489 P.2d 564].) In *Bain* a knife was 11 inches overall in length and had a 5-inch symmetrical blade with beveled but dull sides. It could be locked into position and had a hand guard on it. Since the knife was subject to being folded, and since a pocket-knife is not a dirk or dagger, the court held in *Bain* that a question of fact existed as to whether the knife was a dirk or dagger. In *Forrest, supra,* a weapon was held not to be a dirk or dagger as a matter of law because it was a folding knife which did not lock into place and therefore was not designed primarily for stabbing. In *People* v. *Ruiz, supra,* a bayonet, part of which had been filed off, was held to be a dirk or dagger within the meaning of the statute. In *People* v. *Ferguson* (1970) 7 Cal.App.3d 13, 19 [86 Cal.Rptr. 383], the court referred to the principle "that the test of a 'dirk or dagger' is its capability for use as a stabbing or cutting weapon."

We are satisfied that the weapon used in the present case was designed and could be used for one purpose only—to stab. Thus, we hold that it was a dirk or dagger within the meaning of the statute, as a matter of law, and that the court's failure to define the term to the jury, if error, was not prejudicial.

A similar conclusion applies to the failure of the trial court to define deadly weapon. Whether a weapon is deadly is usually a question of fact.

Such a weapon "is one likely to produce death or great bodily injury . . . ." (*People* v. *Morlock* (1956) 46 Cal.2d 141, 145 [292 P.2d 897]; *People* v. *Helms* (1966) 242 Cal.App.2d 476, 486 [51 Cal.Rptr. 484].) The instrument involved in this case was used to stab someone in the side. The victim was hospitalized as a result of its use. It is obviously a deadly weapon. (Cf. *People* v. *Garcia* (1969) 275 Cal.App.2d 517, 521 [79 Cal.Rptr. 833]; see *People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Raleigh* (1932) 128 Cal.App. 105, 108 [16 P.2d 752].)

Given these circumstances ". . . [W]e cannot conclude that, under a proper instruction as to the meaning of deadly weapon, the jury could have reached any other conclusion than that the [dirk or dagger] was a deadly weapon." (*People* v. *Iverson, supra,* 26 Cal.App.3d 598, 603.)

### III.

### *Other Instructional Problems*

██ Each defendant complains that the court failed to instruct as to included offenses. Specifically, Gonzales argues that the court should have instructed on simple assault. ██ It is clear that a court must instruct, *sua sponte,* on included offenses when the evidence calls for such an instruction, at least if the possibility that the included offense actually occurred is more than "abstruse." (*People* v. *Cooper* (1968) 268 Cal.App.2d 34, 39 [73 Cal.Rptr. 608].) ██ Here, however, there was no defense testimony and the testimony of the eyewitness, Curtis Louis, was that Cabral stabbed his brother. The victim testified at trial that he could not recall who stabbed him. His preliminary hearing testimony was that Cabral did it. The evidence also showed that the victim physically sustained stab wounds. Given this state of the evidence and our holding that the implement used in this fight was a deadly weapon as a matter of law, there was no evidence which would have supported the giving of an instruction on simple assault. Under such circumstances, there was no obligation to instruct on the lesser offense. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Noah* (1971) 5 Cal.3d 469, 479 [96 Cal.Rptr. 441, 487 P.2d 1009].)

██ Gonzales' guilt under the charge of assault with a deadly weapon is obviously that of an aider and abettor. The trial court gave CALJIC instruction No. 3.00, modified as indicated:

"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission ~~or~~ whether present or not, ~~who advises and encourages its commission,~~ are regarded by the law as principals in the crime thus committed and are equally guilty thereof."

The court neglected to give CALJIC No. 3.01.[5] The authors of CALJIC state that No. 3.01 must be given *sua sponte* if instruction No. 3.00 is given. As authority they cite *People* v. *Ponce* (1950) 96 Cal.App.2d 327 [215 P.2d 75], a decision of this court. Apparently the authors refer to the following language in *Ponce:* ". . . Whenever instructions are given to the effect that one may be convicted if he aids and abets the criminal act the two words should be clearly defined. . . ." (96 Cal.App.2d at p. 331.) Adhering to that principle we fail to see how CALJIC No. 3.01, in the context of this case, more clearly defines aid and abet than does CALJIC No. 3.00. The latter, as given to the jury in the present case, stated that anybody who "knowingly and with criminal intent"[6] aided and abetted in the commission of the offense is regarded as a principal. CALJIC No. 3.01 defines aid and abet in almost the same terms. It does add the verbs "promote," "encourages" and "instigates" to "aids." "Promote" and "encourage" are each synonyms of "aid." (See the respective definitions in the Random House Dict. of the English Language (unabridged ed., 1966).) No question of "instigation" by Gonzales was presented. The evidence of his conduct, if it shows anything, established that he furnished the weapon used by Cabral—an act clearly constituting participation in the offense. The jury thus was adequately instructed and the failure to give CALJIC No. 3.01 was not error.

Other claimed instructional errors are raised by the parties. We have examined them and find them to be of no moment.

### IV.

### *The Jury Panel Was Properly Chosen*

■ Prior to the trial the defendants objected to the jury panel. The defendants claimed that they were poor people and members of a class

---

[5]CALJIC No. 3.01 reads as follows:

"A person aids and abets the commission of a crime if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime."

[6]In the light of *People* v. *Standifer* (1974) 38 Cal.App.3d 733, 743 [113 Cal.Rptr. 653], holding that all that is required to convict a person of aiding and abetting is that he do so with knowledge of the wrongful purpose of the one physically committing the crime, CALJIC No. 3.00 has been modified to delete the reference to criminal intent.

systematically excluded from selection as potential jurors. It was stipulated that the facts presented in another criminal case decided by the superior court, holding that the poor constituted a class wrongly excluded from jury venires, would be used to decide the motion to quash the panel.[7] It is undisputed that the Los Angeles Superior Court jury panel is selected at random from the list of registered voters. The thesis of this other case is that the poor register to vote in much less significant numbers than other groups and hence are demonstrably under-represented on jury panels. Inherent in this thesis is the argument that the poor are a definable group. Whether that is so or not, the Supreme Court has stated that "Those who do not choose to register [to vote] cannot be considered a 'cognizable group.' . . ." (*People* v. *Sirhan* (1972) 7 Cal.3d 710, 750, fn. 26 [102 Cal.Rptr. 385, 497 P.2d 1121].) It is not for this court to depart from that conclusion.[8]

## V.

### *It Was Error to Convict Cabral*
### *on Both Counts I And II*

■ It will be remembered that Cabral was convicted under count I of the offense of assault with a deadly weapon in violation of section 245,

---

[7] The precise nature of the stipulation is garbled. Apparently it was intended that the court decide on the basis of the opinion of the trial judge in the other superior court case. The colloquy between the court and counsel in the present case is as follows:

"THE COURT: People vs. Ricardo Cabral and Daniel Gonzales.

"This is here for jury trial. Are there any motions to be made before the panel is brought in?

"MR. HAMEL: Yes, I think so, your Honor. That is the motion, the same motion, I think, that was made—actually it is almost stereotyped now—but the jury is not a true cross-section, the case that Judge Sherman Smith decided here within the month, I would imagine, and I can make that—if I can make that orally, just for the record—

"THE COURT: By stipulation?

"MR. HAMEL: I think so.

"THE COURT: All right. You may make the motion, yes.

"MR. GREEN: I join in the motion, your Honor.

"THE COURT: All right. Now, in order to set the record straight, it is stipulated that the Court may decide this on the same facts as presented in the case that you speak of, the name of which I don't have in mind now.

"MR. HAMEL: I don't either, offhand. We will get it and obtain it for the record.

"I think it is case No. A 277425, if I'm not mistaken, Harold Taylor, John Henry Bowman, and Ray Bordeaux.

"THE COURT: Both sides so stipulate?

"MR. MORSE: So stipulate for the People.

"MR. GREEN: So stipulate.

"THE COURT: The Court has read and considered that case and the facts therein stated. The motion is denied."

[8] Other contentions raised by appellant Gonzales have been considered and found to be without merit.

subdivision (a), and under count II of assault with a deadly weapon by a person confined in a state prison (§ 4501). He was *sentenced,* however, to serve the term prescribed for violation of section 245, subdivision (a). Imposition of sentence on the count involving section 4501 was permanently stayed. The former offense is punishable as a misdemeanor or a felony with the felony penalty being six months to life. The latter offense is punishable only as a felony, the sentence being three years to life. Thus, the section 245, subdivision (a) violation is, as the People concede, an offense necessarily included within the section 4501 violation. It is also conceded by the People that under these circumstances it was error to convict Cabral under both counts I and II. (*People* v. *Greer* (1947) 30 Cal.2d 589, 600-601 [184 P.2d 512].) "When the jury expressly finds defendant guilty of both the greater and lesser offense . . . there is no implied acquittal of the greater offense. If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed. . . ." (*People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763].)

The People suggest accordingly that we should reverse Cabral's conviction under count I, and that he be sentenced pursuant to his conviction under count II. This is a suggestion which we will follow but, under the circumstances, a word of explanation is necessary. When we reverse count I and direct the trial court to conduct sentencing proceedings on count II the result is going to be that defendant will then be subject to the more severe penalties of section 4501 rather than the lesser penalties imposed for violation of section 245, subdivision (a).

Appellant's counsel, recognizing the problem, stated in his brief:

"Even though the appellant is only being punished for one of the two felonies, he receives a benefit from the deletion of one of the two convictions, since a felony conviction carries a potential for future harm in the form of another prior conviction.

"Nevertheless, it is not the purpose of the appeal, to secure possible future benefits at the expense of possibly exposing the appellant to a lengthier period of incarceration now. It is therefore requested that the court fashion its order in accordance with the above objectives."

The dilemma thrust upon us by defendant, concededly caused by the error of the court below, cannot be resolved to defendant's entire satisfaction. It is clear that both convictions cannot stand. (*People* v. *Moran, supra,* 1 Cal.3d at p. 763.) The Supreme Court's mandate is that the conviction of the lesser offense must be reversed. Thus, defendant will receive the benefit of the deletion of one of the two convictions. It is clear that this is a substantial benefit to Cabral, since the double convictions for the same offense might otherwise influence the Adult Authority in fixing his term. (*People* v. *Craig* (1941) 17 Cal.2d 453, 458-459 [110 P.2d 403].)

But, we have concluded that he must face the likelihood of receiving the more severe sentence called for by section 4501. In *People* v. *Massengale* (1970) 10 Cal.App.3d 689 [89 Cal.Rptr. 237], defendants were properly convicted of violating two statutes but had been improperly punished by the trial court because under section 654 a single act and a single intent were involved. The court said:

"Had the trial court pronounced a proper sentence on count III, the remedy on appeal would be to vacate the sentence on count II and affirm the judgment in other respects (*In re Wright,* 65 Cal.2d 650 [56 Cal.Rptr. 110, 422 P.2d 998]). We cannot do that in this case because the sentences pronounced both under count I and under count III are unauthorized by law.

"Under count I, a violation of Penal Code section 518, the only sentence authorized by the Penal Code is imprisonment in the state prison for not less than one nor more than 10 years. (Pen. Code, § 520.) Thus the sentence of one year in the county jail, as given by the trial court, is improper.

"Under count III, for extorting a signature, section 522 prescribes the same punishment as if the money had been delivered, *i.e.,* the punishment provided in section 520. The county jail sentence for this count also is unauthorized.

"When a court pronounces a sentence which is unauthorized by the Penal Code, that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the court. (See *In re Sandel,* 64 Cal.2d 412 [50 Cal.Rptr. 462, 412 P.2d 806] (illegal concurrent sentence for escape corrected to run consecutive-

ly); *In re Robinson,* 142 Cal.App.2d 484, 486 [298 P.2d 656] (jail sentence for forcible rape vacated and prison sentence substituted).) If a trial court refuses to correct an illegal sentence, the People may obtain relief in the appellate court by writ of mandate. (*People v. Superior Court,* 135 Cal.App. 562 [27 P.2d 670]; *People v. Superior Court,* 116 Cal.App. 412 [2 P.2d 843].) When the mistake is discovered while the defendant's appeal is pending, the appellate court should affirm the conviction and remand the case for a proper sentence. (*People v. Phillips,* 76 Cal.App.2d 515, 525 [173 P.2d 392].)

"It should be noted that such a correction of the judgment is not a penalty imposed upon appellants because of their appeals. The rationale of *People v. Henderson,* 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677], forbidding increased punishment after a reversal and second trial, does not apply. The correction in the judgments here would be required whenever the mistake was discovered, regardless of whether or not defendants had appealed.

"We are mindful that the trial court suspended execution of its sentences and granted probation to both defendants. Nothing we say here is intended to influence adversely the trial court's consideration of defendants' application for probation when they are again arraigned for judgment. The fact that defendants exercised their rights to challenge their convictions on appeal must play no part in the disposition made of their cases after remand. (*Moon v. Maryland,* 398 U.S. 319 [26 L.Ed.2d 262, 90 S.Ct. 1730]; *North Carolina v. Pearce,* 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072].)" (*People v. Massengale, supra,* at pp. 692-693.)

We realize that it could be argued that when the trial court orders an erroneous sentence, the People's failure to appeal indicates acquiescence in the procedure. (*People v. Burke* (1956) 47 Cal.2d 45, 53-54 [301 P.2d 241].) The reasoning set forth in *Massengale,* however, and in the cases upon which defendant relies indicate that our course is to see that a proper sentence is imposed. Thus, in *People v. Phillips, supra,* 76 Cal.App.2d 515, the People moved in the appellate court to dismiss the appeal with directions to return the matter to the trial court for resentencing. The motion was denied as such. However, the court while affirming the judgment of conviction did remand the case to the trial court in order that a legal sentence might be imposed in lieu of the one there made. In *People v. Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr.

65, 512 P.2d 289] the Supreme Court held that when the trial court imposes an unauthorized sentence it is subject to being set aside judicially. In the instant case we have more than an unauthorized sentence. We have an unauthorized conviction under section 654, together with the sentence imposed for that offense. And, we have no sentence at all imposed on count II, the count which covers the offense of which Cabral was properly convicted. Under all of the circumstances it is clear that sentence must be imposed on that count. While it is highly unlikely that Cabral would be accorded the benefit of probation, since he is not eligible for it in the absence of unusual circumstances not likely to be found to exist (§ 1203), we do not mean to foreclose the trial court from considering that disposition.

Cabral argues that the trial judge stayed the imposition of the sentence on count II because of a desire to impose punishment on the offense which carried the lower minimum sentence. The record is ambiguous in this respect. At the time that it returned its verdict the jury requested that each defendant be given leniency on all counts. The court indicated that the type of leniency it intended to give in line with that recommendation was not to "sentence" Cabral as to prior offenses charged against him, which had been admitted to be true. Accordingly, it struck the prior convictions. But even if the court intended the sentence on count I as a form of leniency, it was "unauthorized leniency" subject to judicial correction. (*People* v. *Serrato, supra,* 9 Cal.3d 753, 762-763.)

## VI.

### *The Evidence Is Insufficient to Sustain Cabral's Conviction on Count III*

■ Cabral argues that the evidence is insufficient to convict him on count III where the charge was the *concealed* possession of a dirk or dagger. We agree that no evidence supports this conviction and it therefore must be reversed.

The People concede that the evidence fails to show that Cabral concealed the dirk or dagger on his own person. They urge, however, that he aided and abetted Gonzales in concealing it. Their argument is based on the fact that during the fight Cabral said something to Gonzales in Spanish and that 30 seconds thereafter Gonzales handed to Cabral the dirk or dagger which had been concealed in Gonzales' pocket.

The People's argument is unconvincing. They suggest that the facts recited, including Gonzales' attempt to hide the weapon, support the conclusions (1) that Cabral knew of its unlawful presence in the jail, (2) that the weapon was owned either by Cabral or Gonzales and that (3) "Cabral encouraged Gonzales, by asking him for the knife, to conceal the weapon upon his person, both before it was given to Cabral and after it was used by Cabral to stab Louis."

There is simply no evidence to support any portion of this remarkable argument. Cabral's statement, in Spanish, to Gonzales during the fight could have ranged from "I am going to whip this guy" to "Call for a guard to stop the fight" to "Give me some help" to "Give me the knife which you hid in your pocket at my request so that I can use it to stab Louis." The latter speculation might support the conviction. The verdict cannot be upheld on the basis of such guesswork.

## VII.

### Disposition

The judgment with respect to Gonzales is affirmed. With respect to Cabral the judgment is reversed insofar as it relates to the conviction of the offenses charged in counts I and III; the judgment of conviction is affirmed as to count II. The judgment is reversed insofar as it recites with respect to count II that imposition of sentence is permanently stayed. The matter is remanded to the trial court with directions to conduct sentencing proceedings on Cabral for count II, with full discretion in the trial court as to whether any sentence imposed should be consecutive to or concurrent with any other sentence Cabral was serving at the time of the conviction herein, and with full discretion as to granting or denying probation, within the confines, however, of Penal Code section 1203.

Ford, P. J., and Potter, J., concurred.

The petition of appellant Gonzales for a hearing by the Supreme Court was denied November 20, 1975.