[Crim. No. 34334. Second Dist., Div. Five. Dec. 19, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARD BENTON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and William Wesley Patton, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Harley D. Mayfield, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—By jury trial appellant was convicted of discharging a firearm at an inhabited dwelling house. (Pen. Code, § 246.) Outside the presence of the jury appellant had admitted five prior convictions. Appellant was sentenced to state prison.

The victim, Wilma Harris, had known appellant for about 15 years. She had been a friend, sounding board or confidante. He sometimes became angry at her, including on two recent occasions when they argued about a newspaper article and when he came to her home requesting medical assistance and she told him he should go to a hospital instead. He had never threatened her, however.

On October 21, 1977, Mrs. Harris stayed up late watching Johnny Carson and Tom Snyder from her bed. The Tom Snyder show had been on for 15 to 20 minutes when she got up to go to the bathroom. After using the toilet, she suddenly observed appellant outside the house looking through the bathroom window. She addressed him by name, said, "That's not nice. You don't peek in people's windows," and closed the louvered window. Adjacent to the bathroom was a side door. Mrs. Harris heard appellant at the door, saying, "Open the door, I would like to talk to you." She told him it was too late. He said, "Well, what if I start shooting?"

Mrs. Harris went to the phone to call the police. Her 17-year-old daughter, Michele, saw appellant outside a window and said, "Bernard, why don't you leave before she calls the police?" Appellant did not reply. As Mrs. Harris called the police, appellant fired through the door

and through the bedroom window. He then fired additional shots through the living room window, front door, and kitchen window, a pattern as if fired while appellant was walking down the driveway.

Los Angeles Police Officers De Mucha and Wachtler responded to a shooting call at about 1:30 a.m. Officer Wachtler observed several bullet holes in the house and recovered a .22 caliber bullet from the living room wall. Mrs. Harris described appellant and gave Officer Wachtler a picture of him. While the officers were at the house, the telephone rang. Officer De Mucha listened in on the kitchen extension. Mrs. Harris recognized the voice of the caller as appellant. He said, "So you've got the police there," and hung up.

Officer De Mucha heard background traffic noises on the telephone, suggesting that appellant may have called from a phone booth. He and his partner left the residence and found appellant on Glenoaks Boulevard, three or four blocks from the Harris residence and not far from a pay phone, about ten minutes after the call.

After appellant was arrested and booked, he was given access to a telephone to make permitted calls. Appellant called Mrs. Harris at 5 a.m. and stated that he wanted to speak to the children and apologize for everything he had done. Subsequently he called again, saying again that he was sorry and that he had shaved his head. Appellant lived three and a half blocks from the Harris residence and worked at a liquor store one and a half blocks from the residence.

Appellant presented an alibi defense. He testified on his own behalf that he had worked at the liquor store until 1 or 1:15 a.m. and then gone to a party where he stayed until about 2, after which he walked Ann Cunningham home. He was arrested while walking home after dropping her off. He further testified that after his arrest one of the officers told him that he had shot into a woman's house and that if necessary he would be given a paraffin test. Appellant replied to the officer that he would welcome it because he had done no shooting and had no gun. He called Mrs. Harris from jail to ask her why she was going to say that he had shot at her house.

Appellant's alibi as to the party was corroborated by Samuel Pauley and Hattie Star. Ann Cunningham did not testify.

## PRIOR FELONY CONVICTION

■ Appellant contends the trial court erred in allowing the prosecutor to impeach appellant as a witness by referring to appellant's 1966 conviction of attempted burglary. (*People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].) He contends that its remoteness in time so reduced the probative impeachment value of the conviction that it should have been excluded because its prejudicial effect outweighed its probative value. (*People* v. *Antick,* 15 Cal.3d 79, 99 [123 Cal.Rptr. 475, 539 P.2d 43].)

Ironically, the prosecutor had sought to use appellant's 1976 conviction of forgery, but utilized the 1966 conviction instead when appellant's counsel erroneously persuaded the court that the forgery conviction was not a felony.[1]

In any event, remoteness is only one of the factors to be considered by the trial court in exercising its discretion in permitting impeachment for prior felony convictions. (*People* v. *Wilson,* 50 Cal.App.3d 811 818 [123 Cal.Rptr. 663]; *People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) In the absence of a showing by appellant that his prior attempted burglary did not involve a theft, it is assumed that it did and thus is a crime reflecting on appellant's honesty. (*People* v. *Stewart,* 34 Cal.App.3d 244, 247-248 [109 Cal.Rptr. 826], disapproved on other grounds in *People* v. *Rist,* 16 Cal.3d 211, 221 [127 Cal.Rptr. 457, 545 P.2d 833].) That crime was not similar to the crime with which appellant was charged. Appellant had numerous other convictions, and the court permitted one, but only one, to be used for impeachment. To exclude any reference to any of appellant's numerous convictions would have given his testimony a false aura of veracity. Appellant had not led a legally blameless life since the 1966 conviction. The court's ruling did not dissuade appellant from testifying. The court did not err in exercising its discretion under *Beagle.*

## MISCONDUCT

■ Appellant contends the prosecutor committed misconduct in her argument to the jury. Appellant contends the prosecutor should not

---

[1]In the forgery case, proceedings were suspended and appellant was placed on probation, with a year in county jail. He subsequently obtained a dismissal pursuant to Penal Code section 1204.3. Contrary to the argument of defense counsel below, the conviction was a felony for impeachment purposes. (*People* v. *Bradley,* 3 Cal.App.3d 273, 277 [83 Cal.Rptr. 234]; *People* v. *James,* 40 Cal.App.2d 740, 747 [105 P.2d 947].)

have argued that appellant "has a temper that's a character defect" or that appellant and his alibi witnesses were lying. There was no objection to these statements at the time they were made nor any request that the jury be admonished, and therefore these arguments may not normally be raised for the first time on appeal. (*People* v. *Reyes,* 12 Cal.3d 486, 505 [116 Cal.Rptr. 217, 526 P.2d 225].) In any event, neither comment was misconduct. Appellant seizes upon the prosecutor's reference to "character defect" and argues a defendant's character is ordinarily inadmissible to prove his conduct on a specified occasion. (Evid. Code, §§ 786, 1101.) However, the context of the statement is that the prosecutor was commenting upon one of appellant's previous quarrels with the victim.[2] Specific incidents showing prior quarrels or antagonism between a defendant and the victim are admissible. (*People* v. *Daniels,* 16 Cal.App.3d 36, 46 [93 Cal.Rptr. 628].) The prosecutor was entitled to draw inferences from the evidence as to appellant's identity as the perpetrator and his motive for the crime. As to the prosecutor's other comment that appellant's witnesses were lying,[3] this is a permissible inference when the defense evidence is contradicted by the prosecution evidence. (*People* v. *Reyes, supra,* 12 Cal.3d at p. 505.)

■ Appellant also contends the prosecutor committed misconduct in her argument concerning appellant's willingness to take a paraffin test. Appellant had testified that when he was arrested a police officer told him that he would be given a paraffin test if necessary to determine if he had fired a gun. Appellant testified he told the officer he would welcome it because he had not done any shooting and had no gun, but the police did not give him the test. On cross-examination appellant was asked, "But at the time you did know the test was useless?" and he replied, "No, I didn't know anything about the test.... I didn't even know what a paraffin test was. It was referred to me and I asked what it was and he said it was something to tell if you have fired a gun...."

---

[2]"You have heard from Mrs. Harris that the defendant apparently does have a hot temper. He gets mad at things like somebody not giving him an ace bandage when they have in mind his best health he needs to go to the hospital. He gets furious. He has a temper that's a character defect that apparently got him into this trouble that he is facing this time...."

[3]"...You also heard the argument why would all these people come in and perjure themselves on behalf of the defendant. All I can say is ten thousand liars would not raise a reasonable doubt because the point is that the doubt be reasonable. If you believe that three lying witnesses that attend a party in an empty lot can raise a reasonable doubt, then I really don't know what else I can say to you...."

In his argument to the jury, defense counsel stated, "Now, is that a guilty man talking there? Do you accept that scientific test if there is any question in your mind that you shot a gun? You don't. You don't. Mr. Benton was not guilty, knew he didn't do it, and wanted the chance to prove that he didn't."

In reply, the prosecutor argued: ". . . You also hear this argument regarding Officer Wachtler, that he tried this technique with juveniles and it worked. He tried it with a conwise defendant and it didn't work. Well, that is not unreasonable. That makes a lot of sense. A person says, 'All right, I'll take that test. It's useless, but I'll take that test.' It's like the defendant saying, 'Okay, Officer, you can come in,' you are investigating narcotics, 'Come in, search my premises,' in the hopes that the officer misses his stash. It happens all the time. It is not the first time that a person has done that. The defendant wants you to believe that he doesn't want you to know that the test is useless."

Outside the presence of the jury the trial court had determined that appellant's offer to take the test was admissible (cf. *People* v. *Thornton,* 11 Cal.3d 738, 763-764 [114 Cal.Rptr. 467, 523 P.2d 267]), because there was a generally accepted test for finding gunfire residue on a suspect's hand, even though it was not technically the paraffin test. (*People* v. *Palmer,* 80 Cal.App.3d 239, 250-253 [145 Cal.Rptr. 466].) Appellant contends the prosecutor's suggestion the test was "useless" was outside the record and contrary to the court's ruling. However, assuming error, it was adequately cured when, upon defense counsel's objection, the court told the prosecutor not to pursue the point and admonished the jurors that arguments of counsel are not evidence and that the jurors must rely on their own conclusions of what the evidence established. It is not reasonably probable a different verdict would have resulted in the absence of the comment. (*People* v. *Beivelman,* 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913].)

## GOOD-TIME CREDITS

Appellant contends that under Penal Code section 4019 and the 1978 amendments to Penal Code section 2900.5 he is entitled to good-time work-time credits on his prison sentence. The authority for granting such credits rests with the Department of Corrections. (Pen. Code, § 2931.) Appellant must first exhaust administrative remedies. (*People* v. *Tanner,* 95 Cal.App.3d 948, 960 [157 Cal.Rptr. 465].)

## Sentence

■ In the respondent's brief the People urge us to affirm the judgment of conviction but remand the matter to the trial court for resentencing, on the ground the trial court imposed a sentence which was unauthorized by law. Appellant urges in reply that such course is not open to the People or this court on an appeal by the defendant.

Appellant was convicted of violation of Penal Code section 246 which at the time carried a penalty of imprisonment in the state prison for sixteen months, two years, or three years, or in the county jail for one year. (Stats. 1976, ch. 1119, § 1, p. 5023; Pen. Code, § 18.)[4] No statements were filed showing circumstances in aggravation or mitigation (Pen. Code, § 1170, subd. (b)), and the court, finding none, sentenced appellant to the midterm of two years for the crime. In addition, appellant admitted five charged prior felony convictions. Penal Code section 667.5, subdivision (b), requires the court to impose an additional consecutive one-year term for each prior conviction. (See also Pen. Code, § 1170, subd. (a) (2).) As detailed below, the court did not properly calculate the additional term for the priors.

Under Penal Code section 1170.1, subdivision (c), the court must impose the additional terms provided in section 667.5 unless the additional punishment is stricken pursuant to subdivision (g). Subdivision (g) provides: "Notwithstanding any other provisions of law, the court may strike the additional punishment for the enhancements provided in Section [] 667.5...if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment."

Although urged by defense counsel to find mitigating circumstances and to strike the additional punishment for the priors, the court did not do so. The court discussed the fact that although the priors would theoretically add five years to the term, Penal Code section 1170.1, subdivision (f), provides that the term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term, i.e., appellant's actual term could not exceed four years, twice the two-year term for violation of section 246.

---

[4]The statutory range of imprisonment in the state prison was subsequently increased to two, three, or four years. (Stats. 1978, ch. 579, §§ 13, 48.)

Rule 447 of the California Rules of Court deals with such limitations on enhancements. It provides, "No allegation or finding of a fact giving rise to an enhancement shall be stricken or dismissed...because the overall aggregate term of imprisonment would exceed the limit established by section 1170.1 (f). The sentencing judge shall impose sentence for the aggregate term of imprisonment computed without reference to those prohibitions and limitations, and shall thereupon stay execution of so much of the term as is prohibited or exceeds the applicable limit. The stay shall become permanent upon the defendant's service of the portion of the sentence not stayed." Penal Code section 1170.1, subdivision (c), requires the court to follow the sentencing rules of the judicial council.

Thus the proper way to avoid the prohibition of section 1170.1, subdivision (f), would have been to sentence appellant to a term of seven years, with execution of three years stayed, the stay to become permanent upon appellant's service of the four-year term. Instead, the trial court sentenced appellant "to two years for the middle term, and two years for priors, a total of four years. Two years of said term are ordered stayed pending appeal, said stay to become permanent upon completion of serving the first two years." Thus the court (1) failed to pronounce judgment on all five priors and (2) stayed all but two years of appellant's prison term, without justification.

Apparently the court misunderstood rule 447. The only other way of explaining the sentence would be that the court intended to show leniency to appellant by relieving him of the practical effect of all the priors. But in order to accomplish that, the court was required (1) to find that there are circumstances in mitigation of the additional punishment; (2) to state on the record its reasons for striking the additional punishment; and (3) to strike the additional term of imprisonment. (Pen. Code, § 1170.1, subds. (c), (g); Cal. Rules of Court, rules 445, 447.) The trial court did none of these three things in this case.

The sentence imposed by the court was therefore unauthorized by law. The court was required either to sentence appellant for seven years, with three years stayed, or to strike the additional punishment in the manner provided by law if it found circumstances in mitigation of the additional punishment.

■ It is well established that when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court. When the mistake is discovered while the defendant's appeal is pending, the appellate court should remand the case for a proper sentence. (*People v. Massengale,* 10 Cal.App.3d 689, 693 [89 Cal.Rptr. 237]; *People v. Serrato,* 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289]; *People v. Cabral,* 51 Cal.App.3d 707, 717-718 [124 Cal.Rptr. 418].)

Appellant argues that the People could have appealed the sentence directly under Penal Code section 1238, subdivision (a)(6), and that having failed to do so the People may not raise the point on the defendant's appeal. (*People v. Burke,* 47 Cal.2d 45, 53-54 [301 P.2d 241].) This argument was rejected in *People v. Cabral, supra,* 51 Cal.App.3d at page 718, where the court stated: "The reasoning set forth in *Massengale,* however, [that a sentence unauthorized by the code must be vacated and a proper sentence imposed whenever the mistake is brought to the attention of a court] and in the cases upon which defendant relies, indicate that our course is to see that a proper sentence is imposed." (See also *People v. Superior Court (Duran),* 84 Cal.App.3d 480, 490 [148 Cal.Rptr. 698].)

■ Contrary to appellant, we do not view the court's error as simply a failure to state its reasons on the record for striking the additional punishment. (Cf. *People v. Blessing,* 94 Cal.App.3d 835, 838-839 [155 Cal.Rptr. 780], cited by appellant [failure to state reasons for imposing consecutive sentences].) The fact is the court did not strike the additional punishment. The court's error is more analogous to a failure to pronounce sentence on all counts, which is the type of unauthorized sentence that can be corrected by remand on the defendant's appeal. (*People v. Cabral, supra,* 51 Cal.App.3d 707, 717, 719; *People v. Cheffen,* 2 Cal.App.3d 638, 641-642 [82 Cal.Rptr. 658]; *People v. Taylor,* 15 Cal.App.3d 349, 353 [93 Cal.Rptr. 257].) Also distinguishable is *People v. La Fave,* 92 Cal.App.3d 826, 829-830 [156 Cal.Rptr. 63], cited by appellant, where the People's complaint was only that the trial court abused its discretion, not that it imposed an unauthorized sentence.

The record does not support appellant's contention that it was the trial court's intent to mitigate the additional punishment. The court's

comments indicate that it was concerned only with avoiding the double-the-base-term limit of Penal Code section 1170.1, subdivision (f), but apparently the court erroneously calculated how to do this. However, if appellant is correct, the trial court may on remand strike the additional punishment upon finding circumstances in mitigation and stating on the record its reasons therefor. Otherwise, on remand, the court shall impose sentence on the priors in the manner provided by law.

The judgment of conviction is affirmed. The cause is remanded to the superior court for pronouncement of sentence according to law.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1980.