Filed 10/11/23  P. v. Washabaugh CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JARED WASHABAUGH,<br><br>    Defendant and Appellant. | C097891<br><br>(Super. Ct. No. 2022-CR0088702) |

A jury found defendant Jared Washabaugh guilty of possessing three stolen motorcycles.  On January 10, 2023, the trial court granted defendant two years of formal probation.

On appeal, defendant contends the court erred in failing to sanitize his 2020 conviction for possession of stolen property, with which he was impeached at the time he testified.  He adds that the written order granting probation and the clerk's minutes do not match the oral pronouncement of sentence.

1

We will affirm the judgment but direct the trial court to conform its minutes to the oral pronouncement of sentence, as we later explain.

## BACKGROUND

The first amended information charged defendant with possession of three stolen motorcycles. (Pen. Code, § 496, subd. (a).)[1]

At trial, Jonathan L. (J.L.) testified he owned a cabin in Plumas County near Antelope Lake. The last time J.L. visited his cabin before the winter of 2020 was September 2020. He stored three motorcycles on the property in a locked shipping container. The last time he saw them, all three motorcycles were in good condition.

In April 2021, J.L. returned to the cabin and found that the three padlocks securing the container had been cut off, and his motorcycles were gone. J.L. reported the theft to the Plumas County Sheriff's Department and submitted copies of photographs taken by game cameras on the property. Those photographs, taken in November 2020, were black and white and showed a man on the property from the back and side. In one of the photographs, the man is pushing a motorcycle away from the camera.

Lassen County Sheriff's Deputy Michael Loflin testified he received an e-mail from the Plumas County Sheriff's office concerning the stolen motorcycles and the photographs. Deputy Loflin replied that if the suspect (i.e., the man in the photographs) was from Lassen County, it appeared to be defendant.[2] The deputy had known defendant for several years and based his opinion on the suspect's height, weight, and build, as well as his clothing. The deputy admitted that it was not possible to positively identify the

---

[1] Undesignated statutory references are to the Penal Code.

[2] On cross-examination, Deputy Loflin testified in his e-mail back to the Plumas Sheriff's office, he said, "the pictures aren't great, but if it's a Lassen County person, my guess would be [defendant.]"

2

person who was pushing the motorcycle from the photograph.  Those photographs were admitted into evidence at trial for the jury to review.

Deputy Loflin obtained a search warrant for defendant's property in March 2022.  When Loflin arrived to execute the warrant and announced the presence of the police, defendant told Loflin the motorcycles that were the subject of the search warrant were in the garage; they were indeed located there during the service of the warrant.

At the station, defendant was given the warnings specified by *Miranda v. Arizona* (1966) 384 U.S. 436, and he agreed to speak with Deputy Loflin.  Loflin told defendant he knew the motorcycles had been stolen from a residence in Plumas County off the Janesville Grade.  Defendant denied stealing the motorcycles and added he did not take them from a cabin near Antelope Lake.  Loflin had not mentioned Antelope Lake prior to defendant's statement.

At trial, defendant testified on his own behalf.  On direct examination, he admitted he had pleaded no contest to receiving stolen property in 2020 for a crime that occurred in 2017.  No further details of the crime were elicited.  He also testified he did not steal the motorcycles, and he was not the person in the photographs.

Defendant claimed he purchased the motorcycles on November 15, 2020, from a person he found on Craigslist based on his review of the bills of sale.  Those bills of sale were not admitted into evidence.  When originally questioned by the deputy, defendant did not recall the name of the person from whom he bought the motorcycles.

Defendant did not bring the Craigslist advertisement to court, but claimed he attempted to find it.  He did not recall Deputy Loflin asking him to provide certificates of title and stated that he presented them to his attorney just the week before the trial.  He asserted he told Loflin the certificates of title were at his parents' home in Oregon where he keeps all his important documents.  Defendant testified it took eight months to obtain those certificates because he had issues with the post office box.

3

Defendant explained he did not register the motorcycles because he keeps them on his 20 acres of property and does not take them off his property. Defendant claimed he was not aware he was required to register these motorcycles.

On rebuttal, Deputy Loflin testified defendant told him he bought the motorcycles from an acquaintance of someone named Jeffrey Coater. Defendant, however, did not provide a telephone number, an address, or a description of the seller. Despite Loflin's request, defendant never provided him with copies of the bills of sale for the motorcycles.

The jury found defendant guilty as charged.

At sentencing, the trial court noted it had read the probation report and intended to adopt its recommendations. After argument, the court granted probation to defendant for two years "under the terms and conditions set forth in the probation order. [¶] Now, I'm not going to read all of these." After a short conversation about defendant's credit for time served, the court continued, "I'm not going to read all the conditions unless you want me to." Defendant's counsel affirmatively waived the reading of the order granting probation, which the judge signed.

That order, under the heading, "Additional Orders" included the imposition of the $30 conviction assessment fee pursuant to section 70373, subdivision (a)(1) of the Government Code and the $40 court operations fee pursuant to section 1465.8. It also included a probation restitution fine in the amount of $300 in the event probation is revoked pursuant to section 1202.44.

The clerk's minutes from the sentencing hearing state: "The Defendant is ordered to pay a $300 Restitution Fund Fine, and an addition $300 Restitution Fund Finer [*sic*] per PC 1202.45 stayed unless probation is revoked."

As to restitution, the trial court and counsel engaged in a colloquy that resulted in the court concluding it would order restitution but would reserve jurisdiction as to the amount. The court noted that, according to the probation report, restitution was "proposed" in the amount of $6,798. Defendant then asked for a restitution hearing, and

4

the court replied: "This order, I won't order restitution, but I will order restitution and I'll just put after the word defendant shall pay, I'll just put reserved." The resulting minute order states: "The Court inquires if there is victim restitution being requested. . . . [T]he amount requested is $6,798. The Court reserves jurisdiction for the restitution and advises the Defendant of his right to a Restitution Hearing. . . . Matter set for Restitution Hearing on March 8, 2023 at 8:30 a.m." The written order granting probation states, "Defendant shall pay restitution to the victim in the estimated amount of $6[,]798.00, the exact amount shall be determined by the Court."

Defendant filed a timely notice of appeal.

## DISCUSSION

## I

### *Evidence of Prior Conviction*

Defendant argues the trial court erred in refusing to sanitize his prior conviction for receiving stolen property to a generic prior misdemeanor conviction. He adds the court abused its discretion because it was confused about the proper legal standard it should apply when deciding whether to sanitize the conviction. We disagree.

A. *Additional Background*

Prior to trial, the prosecution filed a motion in limine seeking permission to impeach the defendant with a prior misdemeanor conviction for possession of stolen property should he choose to testify. Defendant filed his own motion in limine seeking to exclude that conviction under Evidence Code section 352, or in the alternative, that the trial court sanitize that conviction as a "prior misdemeanor conviction."

At oral argument on the cross-motions, and at the request of the court, defendant directed the trial court to *People v. Cole* (1982) 31 Cal.3d 568 and *People v. Pugh* (1983) 145 Cal.App.3d 854 as supporting his position the trial court should not admit evidence of the prior conviction. During this discussion, the court noted the conviction occurred in

5

2019, the offense took place in 2017, and the conviction did not describe in any manner the nature of the property or the circumstances of the crime.

During a recess, the trial court examined the cases defendant cited and when it returned it noted that both *Pugh* and *Cole* predated Proposition 8. The court stated, "In fact, it was mentioned in the *Pugh* case that both *Cole* and *Pugh* are pre-Prop. 8 cases so they have very limited applicability now that the truth in evidence provision of Prop. 8 has been passed. Even so, I did read the *Pugh* case[,] and *Pugh* was reversed not because it was error to instruct or to allow impeachment by similar or identical prior conviction, but because the judge had failed to engage in the balancing analysis required by Evidence Code section 352. In fact, it was remanded for that purpose. [¶] And I would also note that the *Pugh* case makes specific reference to *People versus Barrick* which is the [S]upreme [C]ourt case that specifically disfavored the use of so called sanitization of offenses which of course became completely unnecessary after Prop. 8 in any event. [¶] So for those reasons, those cases are not particularly helpful for the Court. I am obviously bound to engage in the analysis required by Evidence Code section 352 in this case and that requires that this court consider several things, whether or not the jury is so likely to use the prior conviction for an improper purpose, that it would amount to a violation of due process to allow its use, whether or not its probative value is so minimal that it no longer has any significant bearing on the issue of credibility or likeliness to tell the truth. And obviously whether or not there is undue prejudice that would in some other way result from its use for purposes of impeachment. [¶] And having considered all those things as well as the arguments of counsel, I do not believe that the use of this prior conviction would produce undue prejudice. I will carefully instruct the jury on the very limited use to be made of a prior conviction such as this, and I do believe and I think that the law presumes that in most cases, the jury will follow the instructions of the Court. [¶] Also, it is unfair to the People to allow the defendant to testify under a false cloak of credibility in this case. [¶] In taking all those things into consideration, the People's

6

motion will be granted and should the defendant choose to testify, he may be impeached with his prior conviction for a misdemeanor violation of Penal Code section 496."

As relevant here, the trial court instructed the jury with a modified version of CALCRIM No. 316: "If you find that a witness has committed a crime or other misconduct, you may consider that fact in evaluating the credibility of the witness's testimony. You may not consider this evidence for any other purpose. [¶] The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."

B. *Analysis*

A witness's prior conduct involving moral turpitude is admissible to impeach their credibility "whether or not it produced any conviction, felony or misdemeanor." (*People v. Wheeler* (1992) 4 Cal.4th 284, 297, fn. 7.) A trial court has broad latitude under Evidence Code section 352 to determine admissibility and appropriate sanitization of prior convictions. (*Wheeler,* at p. 296; *People v. Sandoval* (1992) 4 Cal.4th 155, 177-178; *People v. Clark* (2011) 52 Cal.4th 856, 931.) "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark,* at p. 931.) We review the trial court's determination for an abuse of discretion. (*Wheeler*, at pp. 296-297.) The abuse of discretion standard, while deferential, is not hollow. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 858.) " ' "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." ' " (*Ibid.*) That is, a court's exercise of discretion " ' "must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." ' " (*Ibid.*) A "trial court abuses its discretion when it

7

bases its decision 'on impermissible factors [citation] or on an incorrect legal standard [citations]." (*Ibid.*)

Here, the trial court considered the prior conviction's probative value concerning defendant's credibility, as well as the timing of the crime, and acknowledged the prior conviction was for the same offense as charged here.[3] In considering these factors, the court weighed the probative value of the prior conviction against the danger of undue prejudice and found admitting the prior conviction would not result in undue prejudice, and the court would carefully instruct the jury on this point. The court also considered it prejudicial to the People to allow defendant to testify under a false cloak of credibility in this case. (See *People v. Benton* (1979) 100 Cal.App.3d 92, 97 [excluding any reference to defendant's "convictions would have given his testimony a false aura of veracity"].) Ultimately defendant's testimony on this issue was limited to the fact that he pleaded no contest to receiving stolen property in 2020 for a crime that occurred in 2017, without disclosing any facts regarding the crime. We cannot say the court abused its discretion in determining the conviction could be used to impeach defendant.

Defendant argues the trial court was *required* to sanitize the prior conviction because it was identical to the current charge, and therefore the jury would inevitably consider the evidence as proof of a propensity to commit the charged offense. However, he cites no cases supporting this position. Certainly, a trial court has the *discretion* to sanitize a similar prior conviction if its prejudicial value substantially outweighs its evidentiary value. (*People v. Gray* (2007) 158 Cal.App.4th 635, 641-641.) "Although the similarity between the prior convictions and the charged offenses is a factor for the

---

[3] The factor concerning the effect its admission would have on defendant's decision to testify "has no application in this case because defendant actually took the stand and suffered impeachment with the prior." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 926.)

court to consider when balancing probative value against prejudice, it is not dispositive." (*People v. Clark, supra,* 52 Cal.4th at p. 932.) Here, the court weighed the probative value and the prejudicial effect and found the danger of undue prejudice did not substantially outweigh the probative effect.

Any prejudice from the admission of the unsanitized impeaching conviction may be "minimized by the fact that the evidence referred only to the bare fact of the convictions with nothing more." (*People v. Carkhum-Murphy* (2019) 41 Cal.App.5th 289, 298.) Further, the court's instructions can limit that prejudice as well. (*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 91.)

That is what happened here. Defendant only admitted the fact of the conviction and nothing more. Moreover, the trial court instructed the jury it could only consider this prior conviction in evaluating defendant's credibility, and we presume the jury followed the court's instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) This minimized any potential prejudice from the admission of the conviction. A different judge may have properly reached a different conclusion; however, applying the correct standard of review to the trial court's considerations and actions here, we cannot conclude that court abused its discretion in declining to sanitize the prior conviction.

We further conclude the record does not establish the trial court lacked an understanding of the proper legal principles. Rather, it demonstrates the court examined the cases specifically cited by defendant and after identifying the change in the admissibility of relevant evidence after the passage of Proposition 8 (see *People v. Wheeler, supra,* 4 Cal.4th at pp. 290-295), it noted those cases were "not particularly helpful for the court." Following that statement, the court conducted the appropriate Evidence Code section 352 analysis and determined the conviction was admissible in this case. Implicit in its finding that the conviction was admissible is the determination the prior offense did not require sanitizing. We see no misunderstanding by the trial court of its discretion here.

9

## II

### *The Probation Order and Minutes*

Defendant next contends the trial court's order granting probation and the clerk's minutes are at odds with its oral pronouncement at sentencing and must be corrected. First, he asserts the court did not orally pronounce the conviction assessment fee or the court operations fee and thus those fees must be stricken. Second, he asserts the court did not set the restitution amount, but rather reserved jurisdiction over restitution, and therefore we should strike the amount of restitution set forth in the order. Third, he argues the court imposed the stayed restitution revocation fine under section 1202.44 not 1202.45 as reflected in the minutes. The People concede there was a clerical error in referring to the section 1202.44 fine as a section 1202.45 fine but argue the other two items are properly reflected in the record. We agree with the People.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

Defendant forfeited his first argument concerning the conviction assessment and court operations fees when he waived the reading of the recommended order prepared by probation and provided to the parties. (*People v. Robinson* (2002) 104 Cal.App.4th 902, 906.) The trial court's method here promotes the imposition of correct sentences by allowing the parties the opportunity to see the exact items ordered at sentencing and to raise timely objections to correct errors at the time the fines and fees are imposed. (*People v. Hamed* (2013) 221 Cal.App.4th 928, 939-940 [a court may properly state the amount and statutory basis for the base fine and make a shorthand reference in its oral pronouncement to " penalty assessments as set forth in the' probation report, memorandum, or writing"].)

As to the restitution order, as we have described *ante*, the trial court stated that it would initially order restitution in the proposed amount, but then that it was reserving the

10

determination of the exact amount for a future hearing. The relevant portion of the minute order, quoted *ante*, makes that clear. The order granting probation states: "Defendant shall pay restitution to the victim in the estimated amount of $6[,]798.00, the exact amount shall be determined by the Court." This adequately expresses the court's order. We perceive no reason to modify this language.

Finally, we agree with the parties that the trial court intended to require the defendant to pay the stayed probation revocation restitution fine of $300 pursuant to section 1202.44, not 1202.45. We therefore direct correction of this clerical error in the clerk's minutes.

DISPOSITION

The judgment is affirmed. The trial court is directed to correct the clerical error in its minutes to reflect the stayed restitution fine is imposed under Penal Code section 1202.44.

/s/
Duarte, Acting P. J.

We concur:


/s/
Renner, J.


/s/
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.