Filed 8/27/24  P. v. Castillo CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DAVID CASTILLO,<br><br>  Defendant and Appellant. | F084721<br><br>(Super. Ct. No. SF019863A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, for Defendant and Appellant.

-ooOoo-

On February 1, 2020, defendant David Castillo repeatedly stabbed B.E., the mother of three of his children. On March 22, 2022, Castillo was convicted by a jury of, among other things, attempted murder. Castillo was sentenced to an aggregate term of 27 years to life, plus 10 years. Castillo argues that his attempted murder conviction was not supported by substantial evidence, that the upper term sentence on his attempted murder conviction was unauthorized, and that the trial court did not exercise informed discretion when it imposed the upper term on his attempted murder conviction. The People disagree.

We reviewed the record, and it appeared that the trial court erred in staying an enhancement and in calculating the sentence on count 2. Accordingly, we ordered the parties "to submit supplemental briefing to address whether the stay of the Penal Code section 667, subdivision (a) enhancement was unauthorized and whether the sentence of 27 years to life on count 2 was unauthorized." We also ordered the parties to address the appropriate remedy. The parties agree that both errors resulted in an unauthorized sentence and that both errors can be corrected without a remand.

We affirm the attempted murder conviction, but in light of the sentencing errors we remand for a full resentencing.

## PROCEDURAL HISTORY

On June 18, 2020, the Kern County District Attorney filed an information charging Castillo with attempted murder (Pen. Code, §§ 187, 664;[1] count 1);[2] aggravated mayhem (§ 205; count 2); assault with a deadly weapon (§ 245, subd. (a)(1); count 3); corporal injury to the mother of his child (§ 273.5, subd. (a); count 4); and felony child abuse (§ 273a, subd. (a); count 5). As to all counts, the information also alleged that Castillo

---

[1] All further undesignated statutory references are to the Penal Code.

[2] The information also alleged that the attempted murder was deliberate and premeditated, but this allegation was later dismissed.

2.

had suffered two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and two prior serious felony convictions (§ 667, subd. (a)). The information also alleged that, as to counts 1, 3, and 4, Castillo personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)), and as to counts 1, 2, and 4, that Castillo personally used a dangerous or deadly weapon (§ 12022, subd. (b)(1)).

On March 22, 2022, Castillo was found guilty by a jury on counts 1, 2, 3, and 4. As to count 5, the jury found Castillo not guilty of felony child abuse but guilty of the lesser included offense of misdemeanor child abuse (§ 273a, subd. (b)). The jury also found true all three allegations that Castillo personally inflicted great bodily injury under circumstances of domestic violence and all three allegations that Castillo personally used a dangerous or deadly weapon. In bifurcated proceedings, the trial court found both prior strike allegations and both prior serious felony allegations true as to counts 1 through 4.

Castillo was sentenced on June 1, 2022. The trial court imposed an aggregate term of 27 years to life, plus 10 years. On count 1, the trial court sentenced Castillo to 27 years to life (triple the upper term), plus four years for the personal infliction of great bodily injury enhancement (the middle term), one year for the personal use of a dangerous or deadly weapon enhancement, and five years for a serious prior felony conviction enhancement. On count 2, the trial court imposed, but stayed, a sentence of 27 years to life plus applicable enhancements. The trial court also stayed the sentences on counts 3 and 4, as well as the second serious prior felony conviction enhancement attached to count 1. As to count 5, the trial court imposed a concurrent term of 180 days in Kern County Jail.

On July 27, 2022, Castillo filed a notice of appeal.

## FACTUAL SUMMARY

**The Prosecution's Case**

Castillo and B.E. had been in a relationship for approximately 10 years. They had three children together.

On February 1, 2020, B.E. went to Castillo's residence to drop off the three children for a visit (at this time, B.E. no longer lived with Castillo). R.E., B.E.'s stepmother, drove. When they arrived, R.E. parked on the curb in front of Castillo's residence.

Castillo was not home at the time, but B.E. called him and he came home. B.E. went to speak with Castillo, and they spoke as they walked into the residence. Castillo asked B.E. if she was going to stay for a while, and B.E. told him no because she had errands to run but that she would be back early the next day. This made Castillo mad. Castillo also asked B.E. to bring food, which upset B.E. because Castillo made more money but wanted her to bring food whenever she brought the kids over. B.E. told Castillo that he should supply the food. Castillo told B.E. to get out of the house, and she did.

At this point, one of the children, R.C., was still in the car. R.C. was eight years old. B.E. tried to get R.C. out of the car, but he did not want to get out and struggled with B.E. B.E. eventually got R.C. out of the car and onto the yard, and then yelled for Castillo to come help. Castillo told B.E. not to make a scene, and he walked over to them.

Castillo asked R.C. if B.E. was going to see somebody. R.C. "shook his head 'yes' " and said that B.E. was going to see a man.

Castillo then wrapped his arm around B.E.'s neck. At first, B.E. thought Castillo was punching her on her left side. The next thing she knew, she was on the ground and Castillo was on top of her. B.E. saw R.C. crying and hitting Castillo, and Castillo was still hitting her. B.E. did not understand what was going on.

4.

R.C. saw Castillo pull a pocketknife out of his pocket and stab B.E., which is why he hit Castillo. R.C. could not remember how many times Castillo stabbed B.E., but R.C. previously told an investigator with the Kern County District Attorney's Office that he saw Castillo stab B.E. nine times.

R.E., who was in her car, looked out the passenger window because she heard her name being called. R.E. saw what she thought was Castillo punching B.E. in the face twice as B.E. tried to protect herself by putting her arms up. R.E. also saw R.C. on Castillo's back. R.E. called 911. She then saw B.E. fall backward and Castillo crouched over B.E.

Castillo got off B.E., and B.E. stood up. B.E. looked at herself, and there was blood everywhere. She also felt her face "open." At this point B.E. realized that Castillo had been stabbing her, and she thought she was going to die.

B.E. turned to go to R.E.'s car. Castillo was on the driver's side, hitting the window. B.E. went to the car and got in on the passenger side. Castillo started heading in the direction of the passenger's side, and R.E. and B.E. left.

B.E. was taken to a hospital. She had two stab wounds on her face, one along her cheek and one on the corner of her lip. The cut on her cheek hit an artery and "[t]hey had a hard time closing it up." Stiches were used to close both wounds, and the stiches stayed in for almost a month. She also had swelling in her face for about a month.

Additionally, she had stab wounds on her arm and along her ribs. The wound on her ribs did not require stiches, but she had stiches "all over" her arm.

At the time of trial, B.E. still experienced numbness in her cheek and arm, she sometimes got little sharp pains in her face, and she had scars on her face, arm, and back.

On the day of the incident, Orlando Ramos, a deputy sheriff with the Kern County Sheriff's Office, was dispatched to Castillo's residence. Ramos saw blood on the front yard and on the sidewalk, and he was able "to determine that there was a good amount of blood."

**Castillo's Case**

Castillo testified on his own behalf. B.E. left Castillo in 2018 or 2019 and moved to Sacramento. However, after B.E. moved to Lamont, Castillo and B.E. would sleep together sometimes and "it was just like [they] were still together."

On February 1, 2020, B.E. and R.E. came to Castillo's residence to drop off Castillo's children for the weekend. At this point, Castillo was not angry at B.E. At or around the time that B.E. left Castillo's residence to get R.C. from the car, Castillo told B.E. to get out because B.E. told Castillo that she was not going to stay.

After R.C. left the car, Castillo spoke with R.C. Castillo asked R.C. where B.E. was going and why she did not want to stay. R.C. told Castillo it was " 'because Benjamin is over there at the apartment.' " Castillo responded, " '[o]h, Benjamin is over there,' " and blacked out. At the time of blacking out, Castillo was angry with B.E.

Castillo admitted that he had a pocketknife and that he attacked B.E., but he did not remember doing it. He also did not remember walking to R.E.'s car or banging on its window.

At no point prior to blacking out did Castillo want to kill B.E. Additionally, after Castillo began to perceive things again and realized that B.E. needed emergency medical attention, he never thought that he had wanted to kill B.E.

Castillo admitted that on one prior occasion he hit B.E.'s shoulder twice with his palm. He also admitted that he previously stabbed two others, his ex-wife and a woman he lived with.

Castillo's daughter-in-law, D.C., also testified on Castillo's behalf. D.C. testified that Castillo was "a good man."

**DISCUSSION**

## I. Substantial Evidence Supports the Attempted Murder Conviction

### A. Applicable Law and Standard of Review

" '[A]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) "[I]t is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder, may in many cases be inferred from the defendant's acts and the circumstances of the crime." (*Id.* at p. 741.) " 'Whether a defendant possessed the requisite intent to kill is … a question for the trier of fact.' " (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552.)

When evaluating a sufficiency of evidence claim, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "The test for evaluating a sufficiency of evidence claim is deferential." (*People v. Flores* (2020) 9 Cal.5th 371, 411.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Flores*, *supra*, at p. 411.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, *supra*, at p. 508.)

### B. Analysis

Castillo argues there was insufficient evidence to show that he intended to kill B.E. The People disagree.

Castillo's arguments are not persuasive. Both B.E. and R.C. testified that Castillo stabbed B.E., and Castillo admitted to doing it. Moreover, B.E. testified that she had two

stab wounds on her face: one stab wound along her cheek and one stab wound on the corner of her lip. The wound on her cheek was three to four centimeters and hit an artery. Stiches were used to close both wounds, and some of the stitches were placed inside B.E.'s mouth. Additionally, B.E. had stab wounds on her arm and along her ribs. While the wound on her ribs did not require stiches, Castillo hit a bone near B.E.'s elbow and she had stiches "all over" her arm. Finally, the jury was shown video and pictures of the wounds B.E. sustained from the attack.

Accordingly, "the totality of the circumstances, including the manner of the attack and the number and location of the penetrating knife wounds, was sufficient to support a finding of intent to kill." (*People v. Gonzalez*, *supra*, 126 Cal.App.4th at p. 1552 [the "appellant's intent [to kill] was established by the evidence of his unprovoked attack that rendered the unarmed victim prone and defenseless as appellant repeatedly stabbed him with a shank he had hidden in his boxers"]; accord, *People v. Avila* (2009) 46 Cal.4th 680, 701-702 [evidence of the defendant's repeated attempts to stab the victim, who was unarmed and trapped, and the defendant's successful stabs to the victim's arm and leg, "alone [was] substantial evidence of [the] defendant's intent to kill"].)[3]

In addition, while "motive itself is not an element of [attempted murder]," "evidence of motive is often probative of intent to kill." (*People v. Smith*, *supra*, 37 Cal.4th at pp. 740-741.) And here, there was evidence of motive. Castillo attacked B.E.

---

[3] Castillo attempts to distinguish his case from other cases involving stabbings. Notably, however, Castillo does not cite a single case in which a court found that there was insufficient evidence of attempted murder where the defendant repeatedly stabbed the victim with a knife (or even a case where the defendant "only" stabbed the victim once). Nor does Castillo cite a single case where a court found insufficient evidence because the knife used to repeatedly stab the victim was "only" about three inches. Thus, these arguments are not persuasive. As described in this opinion, based on the totality of the evidence, including the number of stab wounds, the injury suffered, and the motive to kill, the jury could reasonably have concluded that Castillo intended to kill B.E.

after he was told that B.E. was going to see another man, and Castillo admitted that hearing this caused him to feel jealousy and anger.

Further, while the above evidence is by itself sufficient, Castillo also admitted that the injuries he caused B.E. could have killed her. And, when asked by the prosecutor if he agreed "that if someone stabs another individual in the face or in the head that that person is trying to do their very best to end that person's life," Castillo responded, "I guess so."

Finally, Castillo is correct that there is evidence in the record from which a jury could have concluded that he did not intend to kill B.E., such as testimony that he voluntarily stopped attacking B.E. However, " '[a]lthough it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358; see also *People v. Lee* (2011) 51 Cal.4th 620, 632 [" 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.' "]; *People v. Flores*, *supra*, 9 Cal.5th at p. 411 ["We must … 'accept logical inferences that the jury might have drawn from the circumstantial evidence' "].)

Accordingly, substantial evidence supports Castillo's attempted murder conviction, and his claim fails.

## II. Castillo's Sentence Is Unauthorized and We Remand for a Full Resentencing

We next address Castillo's sentence. As to count 1, the trial court found true two section 667, subdivision (a) five-year enhancements, but stayed imposition of one of them. The parties agree, as do we, that the trial court did not have authority to stay Castillo's second five-year enhancement. "Ordinarily, an enhancement must be either imposed or stricken 'in furtherance of justice' under Penal Code section 1385. [Citations.] The trial court has no authority to stay an enhancement, rather than strike it—not, at least, when the only basis for doing either is its own discretionary sense of justice." (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364.) "Rather, the only authority for staying an enhancement is California Rules of Court, rule 4.447, which applies when 'an enhancement that *otherwise* would have to be either imposed or stricken is barred by an overriding statutory prohibition. In that situation—and that situation only—the trial court can and should stay the enhancement.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 139.) The sentence on count 1 is therefore legally unauthorized. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 886-887.)

As to count 2, aggravated mayhem (§ 205) the trial court imposed (and stayed) a sentence of 27 years to life pursuant to section 667, subdivision (e)(2)(A), plus applicable enhancements. "The three options for calculating the minimum term of the life sentence (the 'minimum indeterminate term' or simply the 'minimum term') are set out in section 667, subdivision (e)(2)(A). 'Option 1' calculates the minimum term by tripling the term that would otherwise apply to the offense. [Citation.] The minimum term in 'Option 2' is 25 years to life. [Citation.] And 'Option 3,' sometimes referred to as the 'traditional sentencing' option, calculates the minimum term using normal determinate and indeterminate sentencing procedures, including enhancements. Under Option 3, the minimum term is '[t]he term determined by the court pursuant to [s]ection 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with [s]ection 1170) of Title 7 of Part 2, or any period prescribed by

10.

Section 190 or 3046.' " (*People v. Flores* (2021) 63 Cal.App.5th 368, 379-380.) The trial court is required to select the greatest minimum term. (§ 667, subd. (e)(2)(A).)

The parties agree, as do we, that the greatest minimum term of the life sentence was Option 2, 25 years. It appears that, at most, triple the term for aggravated mayhem would result in a minimum term of 21 years. (§§ 205 ["Aggravated mayhem is a felony punishable by imprisonment in the state prison for life with the possibility of parole"]; 3046, subd. (a) ["An inmate imprisoned under a life sentence shall not be paroled until he or she has served the greater of the following: [¶] (1) A term of at least seven calendar years. [¶] (2) A term as established pursuant to any other law that establishes a minimum term or minimum period of confinement under a life sentence before eligibility for parole."].) It also appears that, at most, the term for the underlying conviction including enhancements imposed by the trial court would result in a minimum term of 13 years. (§ 3046, subd. (a).) No option allowed the trial court to pick a minimum term of 27 years. Accordingly, the sentence on count 2 is legally unauthorized as well. (See *In re Sheena K.*, *supra*, 40 Cal.4th at pp. 886-887.)

However, we disagree with the parties that the appropriate remedy is for us to correct these errors without remanding the matter. In addition to the errors above, Castillo is correct that the trial court erred in its application of section 1170.[4]

Section 1170 authorizes a trial court to "impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170,

---

[4] To the extent Castillo forfeited this argument, we exercise our discretion to consider it. (*People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].)

subd. (b)(2).)  The court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)

Here, the prosecutor filed a motion to allege six aggravating factors, and the parties agreed to a court trial on the factors.  The trial court held the trial on March 30, 2022.  However, it did not make any findings or otherwise rule on the motion.

At sentencing, the trial court imposed 27 years to life, plus applicable enhancements, on count 1.  This was triple the upper term of nine years.  (§§ 187, 664.)  While the trial court stated that it "read and considered the motion for factors in aggravation," it once again did not make a ruling on the motion or a finding on any of the aggravating factors included therein.  Instead, it "note[d] that the circumstances in aggravation as presented in the Probation Department's report outweigh[ed] the circumstances in mitigation on -- that those are contained in the probation officer's report based upon the count [the trial court] sentenc[ed] [defendant] on … which is a life term."

There are two issues with this.  First, the trial court imposed triple the upper term on count 1, but it did not grant the prosecutor's motion to allege six aggravating factors or make a true finding on any of the aggravating factors.  Second, even if the trial court intended to grant the motion and make a true finding on the aggravating factors, at sentencing it did not rely on the factors in the motion.  Instead, it relied on the factors in the probation officer's report.  This report included four aggravating factors, rather than the six in the motion.  Additionally, one of the aggravating factors in the probation report, which the trial court relied on, was not included in the prosecutor's motion.[5]

To conclude, Castillo's sentence includes at least two errors which render his sentence unauthorized:  the trial court stayed (rather than struck) a section 667, subdivision (a) enhancement on count 1 and imposed a 27-years-to-life term on count 2

---

[5]  We note that the probation report also listed three factors in mitigation.

12.

when the maximum allowable term was 25 years to life.  "[W]hen the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court.  When the mistake is discovered while the defendant's appeal is pending, the appellate court should remand the case for a proper sentence."  (*People v. Benton* (1979) 100 Cal.App.3d 92, 102; see *People v. Codinha* (2023) 92 Cal.App.5th 976, 994.)  Accordingly, we will vacate the sentence and remand the case for a full resentencing.  (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)  Given this, we need not resolve whether the trial court's errors in applying section 1170 were harmless or subject to a harmless error analysis.

## DISPOSITION

Castillo's attempted murder conviction is affirmed.  Castillo's sentence is vacated.  The matter is remanded to the trial court to conduct a full resentencing consistent with this opinion.

SMITH, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.

13.